# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## FILE NO. 1:24-cv-00063-MR

MATTHEW AARON SAFRIT,      )
           )
    Petitioner,       )
           )     **MEMORANDUM OF**
vs.           )  **DECISION AND ORDER**
           )
LESLIE COOLEY DISMUKES,    )
Secretary, North Carolina     )
Department of Adult Correction,  )
           )
    Respondent.      )
_____ )

**THIS MATTER** is before the Court on the Respondent's Motion to Dismiss [Doc. 9], and the Petitioner's Objection thereto. [Doc. 11].

## I.    BACKGROUND

The Petitioner is a prisoner of the State of North Carolina, currently incarcerated at the Pender Correctional Institution.[1] On April 23, 2014, Petitioner was convicted of Second-Degree Murder, Assault with a Deadly Weapon Inflicting Serious Injury, and being a Felon in Possession of a Firearm, by the Cleveland County Superior Court. [NCDAC Database].

---

[1] See https://webapps.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=1019077&searchOffenderId=1019077&searchDOBRange=0&listurl=pagelistoffendersearchresults&listpage=1 (herein "NCDAC Database"); Fed. R. Evid. 201.

Petitioner received consecutive sentences for each of his convictions resulting in a combined term of imprisonment of 29 years, 6 months, and 25 days. [Id.]. The Petitioner's projected release date from incarceration is October 31, 2034. [Id.].

The Petitioner filed this habeas proceeding not seeking to challenge his underlying state convictions. Petitioner asserts that following those convictions, and while in the custody of the North Carolina Department of Adult Correction (herein "NCDAC"), the NCDAC through its Disciplinary Hearing Officer ("DHO") rendered an unconstitutional verdict on June 27, 2023, when finding him guilty of a "B-25" disciplinary infraction for "disobeying a direct order." [Doc. 1 at 1].

For context leading to his disciplinary charge, Petitioner explains he has a history of mental health issues, including hospitalizations for failed suicide attempts since the age of fourteen. [Id. at 6]. He suffers from Sensory Processing Sensitivity and can get easily overwhelmed by internal and external sensory stimuli. [Id. at 7]. As the pertinent facts underlying his claims, Petitioner alleges that:

> After spending time at the dormitory-style prison Neuse Correctional, Safrit's sensory intake became intolerable. Safrit made multiple pleas to the warden via in-house mail, custody via the grievance procedure, and to mental health staff via multiple channels as his ability to maintain positive thinking patterns deteriorated. The warden never responded to mail; custody

laughed at and ridiculed him, eventually pressuring him to stop his grievance with threats of isolation in the nude (against his therapist's recommendations); and mental health, with limited resources, could not provide the help they knew Safrit needed. On the night of 16 March 2023 (after approximately six-months of complaints and pleas), Safrit hid under his cover and tried to kill himself by cutting his writs multiple times, deeply, with nail clippers. The next day he was placed on suicide watch.

Safrit's psychologist recognized his difficulties came due to the dormitory housing at Neuse. Moreover, she believed Safrit would benefit from in-house mental health therapy at Central Prison. She completed the necessary paperwork to admit Safrit, but he was turned down because staff shortages kept Safrit (and others) from being able to attend daily therapy session if they came to Central Prison, which would "do more harm than good."

On 8 June 2023, Safrit was told by custody that he had to leave segregation (though he was still on in-camera observation due to mental-health concerns) and return to the prison yard causally linked to his suicidal behavior or else be written up for the "B-25" charge of "disobeying a direct order." Safrit refused to return to the yard, was charged with the B25, and was transferred to Mountain View Correctional on 22 June 2023.

On 27 June 2023, Disciplinary Hearing Officer (DHO) Randy Mull conducted Safrit's disciplinary hearing.

As soon as Safrit sat down he was asked how he pled. As soon as Safrit said he "had to plea not guilty" (in order to preserve habeas review), Mull said, with a smirk on his face, "well you just got found guilty."

[Id. at 7-9].

Petitioner asserts he was never permitted to proffer a defense, he was denied the presentation of evidence, and he was denied the ability to present witness testimony. [Id. at 10]. As the penalty for this infraction, the DHO

3

imposed on Petitioner a loss of 30 days sentence credit, 20 days of solitary confinement, 40 hours of extra duty, 60 days canteen restriction, 60 days of phone restriction, and a fine of $10.00.  [Id.].

Petitioner appealed the DHO's decision "through the disciplinary review procedure, and was summarily denied."  [Id. at 2].  Petitioner states he then challenged the disciplinary decision by bringing an action in "the Avery County district court, No. 23 CRS 192." [Doc. 1 at 1].  Petitioner further states the Avery County court summarily denied his action on August 16, 2023, so he filed a petition for writ of certiorari in the North Carolina Court of Appeals, "NCCOA Case no. P23-618." [Id. at 2].   Petitioner's request was "denied 13 December 2023 with no comment." [Id.].   Petitioner then sought discretionary review in the North Carolina Supreme Court, "case no. 381P22-4," but that court denied review as well "with no comment." [Id.].

The Petitioner commenced the present habeas action on February 22, 2024. [Doc. 1].  The Petitioner alleges four grounds: three substantive due process violations of the Fourteenth Amendment and one procedural due process violation of the Fourteenth Amendment. [Doc. 1 at pp. 2-5; 12-16]. Petitioner's request for relief seeks "[r]estoration of good time and restoration of lost funds following expungement of conviction, appointment of counsel

for help in discovery, and any other proper relief, including a declaration of the policy's unconstitutionality as used herein." [Id. at 5].

On November 17, 2025, the Court conducted its initial review of the § 2254 petition and attached exhibits. The Court preliminarily found that Petitioner had administratively and judicially exhausted his federal claims surrounding the forfeiture of his good time credits and that such claims did not appear to be clearly frivolous. Rule 4, 28 U.S.C.A. foll. § 2254. As such, the Court directed Respondent to answer or otherwise plead to the petition. [Doc. 5]. On February 17, 2026, the Respondent filed a Motion to Dismiss [Doc. 9] and Supporting Brief. [Doc. 10]. The Petitioner opposed the Respondent's dismissal motion by filing his formal Objection thereto February 27, 2026. [Doc. 11]. The matter is now ripe for the Court's review.

## II. DISCUSSION

Title 28, U.S.C. § 2254, applies to "a person in custody under a state-court judgment who seeks a determination that the custody violates the Constitution, laws, or treaties of the United States. Rule 1(a)(1), 28 U.S.C. foll. § 2254. Under § 2254, a state prisoner's claims are limited to allegations that challenge either the fact or duration of their confinement. Preisier v. Rodriguez, 411 U.S. 475, 489 (1973).

A petitioner may proceed on a claim related to a prison disciplinary proceeding only to the extent that the disciplinary conviction increased the duration of the petitioner's custody. <u>Wilkinson v. Dotson</u>, 544 U.S. 74, 79 (2005) ("Because an action for restoration of good-time credits in effect demands immediate release or a shorter period of detention, it attacks 'the very duration of ... physical confinement,' ... and thus lies at 'the core of habeas corpus[.]' ") (quoting <u>Preisier</u>, 411 U.S. at 487-488). Inmates possess a protected liberty interest in the award of gain time and are entitled to "the minimum requirements of procedural due process" at disciplinary proceedings resulting in the loss of gain time. <u>Wolff v. McDonnell</u>, 418 U.S. 539, 557-558 (1974).

The Respondent in this matter has moved to dismiss the § 2254 petition on mootness grounds, citing North Carolina's Structured Sentencing Act. Under the Act, when a state trial court sentences a defendant convicted of crime, the court imposes a minimum and maximum term of imprisonment. N.C. Gen. Stat. §§ 15A-1340.13(c); -1340.17. While serving a sentence, an inmate can earn time credits to reduce his sentence from the maximum imposed down to the minimum. But, the "maximum term may be reduced to, but not below, the minimum term by earned time credits awarded to an offender by the Division of Prisons of the Department of Adult Correction or

the custodian of the local confinement facility, pursuant to rules adopted in accordance with law." N.C. Gen. Stat. § 15A-1340.13(d). According to the Respondent, the posture of Petitioner's sentence is that it presently exists at the "flat minimum." [Doc. 10 at 4]. Even if the 30 days of sentence credit Petitioner lost as a result of the "B-25" disciplinary infraction were restored, Respondent asserts the return of those 30 days would not impact his sentence as they cannot, consistent with North Carolina law, lower Petitioner's release date any further. [Id.]. Since the restoration of the 30 days of credit does not reduce the duration of Petitioner's sentence due to the operation of North Carolina sentencing law, Respondent asserts Petitioner's habeas action is rendered moot. [Doc. 10 at 5].

Petitioner, in his Objection to the Respondent's dismissal motion, does not argue that the 30 days earned credit taken as a result of the disciplinary infraction, if restored, impacts his sentence's "minimum term." In an effort to prevent a finding of mootness, Petitioner asserts that the NCDAC's $10.00 fine, together with allowing it "to get away with imputing guilt and taking property from Petitioner" using unconstitutional means, are "collateral consequences" preventing dismissal. [2] [Doc. 11 at 1-2].

---

[2] In his Objection, the Petitioner refers to his $10.00 fine and the NCDAC's alleged unconstitutional hearing procedures as "collateral consequences" of his prison disciplinary conviction. [Doc. 11 at 1]. Collateral consequences refer to the indirect

Given the remedies Petitioner seeks beyond a sentence reduction –
monetary and declaratory relief – the confines of federal habeas jurisdiction
articulated by the Supreme Court in <u>Preisier</u> and <u>Wolff</u> need to be examined.
In <u>Preiser</u>, New York state prisoners complained that the procedures for
depriving them of good time credits were constitutionally invalid, in violation
the due process clause. <u>Preiser</u>, 411 U.S. at 476. He brought a civil rights
action, pursuant to 42 U.S.C. § 1983, seeking an injunction to compel
restoration of their good time credits. <u>Id.</u> The question presented to the
Court was whether state prisoners seeking such redress may obtain
equitable relief under § 1983, even though 28 U.S.C. § 2254 clearly provided
the specific remedy, restoration of their good time credits. <u>Id.</u> at 477. The
Court held that because the state prisoners were challenging the duration of
their confinement and were seeking a speedier release, their sole federal
remedy was by writ of habeas corpus. <u>Id.</u>

The following year, the Supreme Court decided <u>Wolff</u>. In that matter,
Nebraska inmates alleged that the rules, practices, and procedures at their
state prison resulted in the taking of good time credits in violation of the

---

effects of a conviction that are not part of the formal sentence imposed. Unlike direct
consequences, such as custodial time, fines, and restitution for example, collateral
consequences are typically civil or administrative penalties, like the loss of a professional
license or the forfeiture of the right to vote, triggered automatically based upon the type
of conviction sustained. As such, what the Petitioner refers to as the collateral
consequences of his disciplinary conviction are actually the direct consequences of it.

8

Fourteenth Amendment. <u>Wolff</u>, 418 U.S. at 553. The inmates brought a § 1983 action seeking three forms of relief: (1) restoration of good time; (2) establishment of constitutionally compliant hearing procedures used when sanctions of withholding and forfeiture of good time could be imposed; and (3) damages for the deprivation of civil rights resulting from the use of the allegedly unconstitutional rules, practices, and procedures. <u>Id.</u> The <u>Wolff</u> Court began by noting and reaffirming <u>Preiser</u>'s holding that the state inmates' claim for restoration of good time could only be brought in a habeas action under § 2254. <u>Id.</u> at 554. It also noted that habeas corpus is not an appropriate or available remedy for damages claims or equitable relief, which could be pressed under § 1983 along with suits challenging the conditions of confinement. <u>Id.</u> The Court held the inmates' damages claim was properly brought under § 1983 even though it required a determination of the validity of the procedures employed by prison personnel for imposing sanctions, including loss of good time. "Such a declaratory judgment as a predicate to a damages award would not be barred by <u>Preiser</u>[,]" according to the Court, because "only an injunction restoring good time improperly taken is foreclosed, neither would it preclude a litigant with standing from obtaining by way of ancillary relief an otherwise proper injunction enjoining the prospective enforcement of invalid prison regulations." <u>Id.</u> at 555.

As such, Preiser and Wolff mandate that when a state inmate attacks the legality of his custody or length of his confinement, the inmate must bring a habeas action pursuant to 28 U.S.C. § 2254 and is limited thereby to challenging only the fact or duration of their confinement. While the Petitioner's habeas claim is moot, he is not without redress regarding the other direct consequences of his disciplinary conviction. Assuming procedural requirements are met, he may bring a civil rights action, pursuant to 42 U.S.C. § 1983, seeking declaratory or equitable relief when challenging the conditions of confinement or the prison's disciplinary rules, practices, and procedures, on constitutional grounds. Further, the Fourth Circuit has held, in Brown v. Stapleton, 142 F.4th 252 (4th Cir. 2025) – a § 1983 case cited by the Petitioner in his Objection [Doc. 11 at 1] – "that inmates have a property interest in the money in their trust accounts." Id. at 256. Therefore, and like the plaintiff in Brown, the Petitioner may institute a § 1983 action in an effort to vindicate his claim to a refund of the $10.00 fine.

III.    CONCLUSION

The essence of habeas corpus is an attack by a person in custody upon the legality or duration of that custody. The traditional function of the writ is to secure the expedient release from illegal custody. In this matter, restoring Petitioner's 30 days of earned credit revoked due to his prison

disciplinary conviction would not alter his minimum term release date, and thus would not alter the duration of his custody.  Therefore, in light of the fact that Petitioner's remaining claims are not cognizable in this habeas action, the Respondent's Motion to Dismiss shall be granted and the § 2254 petition filed in this action shall be dismissed as moot, and Petitioner's remaining claims regarding the recovery of this fine and for declaratory judgment will be dismissed without prejudice.

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (noting that, in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (holding that, when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

## O R D E R

**IT IS, THEREFORE, ORDERED** that:

1. The Respondent's Motion to Dismiss is **GRANTED** [Doc. 9].

2.	The Petition for Writ of Habeas Corpus [Doc. 1] is **DISMISSED as moot**, and the remaining claims are dismissed without prejudice.

3.	Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court **DECLINES** to issue a certificate of appealability.

4.	The Clerk of Court is respectfully directed to close this case.

**IT IS SO ORDERED.**

Signed: March 17, 2026

Martin Reidinger
Chief United States District Judge